# FEDERAL DEFENDER SERVICES
# OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Joseph A. Bugni, Madison Supervisor
John W. Campion
Jessica Arden Ettinger
Anderson M. Gansner
Gabriela A. Leija
Dennise Moreno
Ronnie V. Murray
Tom E. Phillip
Joshua D. Uller
Alexander P. Vlisides
Kelly A. Welsh

22 East Mifflin Street
Suite 1000
Madison, Wisconsin  53703

Telephone 608-260-9900
Facsimile 608-260-9901

May 24, 2021

Honorable James D. Peterson
United States District Court Chief Judge
120 North Henry Street
Madison, Wisconsin 53703

> Re:  *United States v. Anthony Brooks*
>      Case No. 21-cr-98-jdp

Dear Judge Peterson:

In anticipation of the sentencing hearing, the defense submits this memorandum. The guidelines are 37-46 months. Brooks requests a sentence of 30 months. This sentence is sufficient in light of the extraordinary growth Brooks has demonstrated, including working to address the alcohol addiction that drives his criminal history. The conduct here involves Brooks drunk and angry with a gun. It is serious conduct and he will receive prison time. But the need for many years' incarceration recedes when a person has been putting the pieces in place to safely transition back to the community. Brooks has independently sought treatment, has a proven work ethic, and a job waiting for him when he is released. His demonstrated commitment plus the accountability of supervision can effectively keep him sober, and when he doesn't drink, he does not pose a danger to the community. His extraordinary progress and work ethic show he has been setting himself up for sustained success after release. A sentence of 30 months is sufficient.

FEDERAL DEFENDER SERVICES
 OF WISCONSIN, INC.

Page -2-

### I. Brooks has built a path towards stability and is poised for success on supervision.

In the past year, Brooks has made meaningful strides and impressed nearly everyone he's come in contact with. Both prior to his arrest and in custody, he has worked to find stable housing, address his addiction, and educate himself. He has also demonstrated an exemplary work ethic. Counsel recognizes that this Court will sometimes explain that good behavior and rehabilitation while in custody is laudable but can only play a small role at sentencing, because the defendant is in a much more structured environment, with strong motivation to impress the Court. But Brooks' situation is different and his work over the past year is more meaningful in at least three ways.

First, Brooks has always displayed a strong work ethic and, despite his addiction, was working towards stability. For the past six years, he worked for P&H Cleaning. PSR ¶ 101. He excelled in the work, and any gaps were due either to short periods in jail or slow business for the company. P&H praised his "strong work ethic" and stated he will have a job there whenever he is released. Att. 1.

He also had his first child in July. While his girlfriend Ms. Gorman was pregnant, he worked to get the couple stable housing by applying to Sankofu Health, an organization that helps young families avoid homelessness. His case manager there had high praise of him. Att. 2. He not only fulfilled the expectations of the program, including job training, she called him "by far one of the best clients that I have had the pleasure to serve." Att. 2. He was "very active in changing the dynamics for his newborn son and fiancé." Att. 2.

Unfortunately, he had not yet addressed his drinking. In July, he was arrested for this offense, and released on bond in state court. Independent of any court, he sought intensive outpatient treatment for himself. In addition to a full-time job and a construction apprenticeship through Sankofu, he attended substance abuse treatment through Jesse Crawford Recovery Center for 2 hours a day, Monday through Thursday. PSR ¶ 96. For an addict defendant who has been arrested many times, a question for the Court is often: how can we know that it's different this time? Brooks had demonstrated that he was working towards change and addressing his addiction before he was in custody.

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Page -3-

Third, Brooks' performance in custody has not been merely exemplary, it has been second-to-none. After his arrest, his work ethic wouldn't let him stay idle. He became a pod helper, through which he volunteered by serving meals, cleaning, and handling other duties. PSR ¶ 100. He impressed the jail staff so much that two deputies offered to write statements of support for him, a rare occurrence. Att. 3, 4. These letters praise his hard work, respectfulness, and positive influence. *Id.* As a pod helper, he stayed busy and used his time productively. Att. 5. He was later elevated to be an inmate worker, for which he was paid and was entrusted with a greater level of autonomy. PSR ¶ 100.

In addition to work, he pursued virtually every opportunity for education offered by the jail. He literally completed all virtual learning courses available through the jail tablets. PSR ¶ 100, att. 6. He also completed a parenting training course, a course valued by Dane County Sherriff Kalvin Barrett, who Brooks had an opportunity to meet at the graduation ceremony. Att. 7, 8. His instructor praised his "strong desire to be more engaged and present in his child's life." Att. 9. He also completed a course in employability skills, and his instructor praised his eagerness to learn. Att. 10.

Taking all of this together, a picture forms that answers the question: why is this time different? First, Brooks stepped up by getting his new family into a program to address their homelessness so that he could finally build his stable employment into a stable life. The problem? He hadn't yet addressed his alcohol addiction, leading to this offense in July. So in August, he took the next step: independently engaging in alcohol treatment, four times a week on top of his full time job. He has now been held in this case since October, but he hasn't let that stop his progress. He has not only attended Alcoholics Anonymous and education courses, he maintained a full work schedule in the jail and earned the respect and support of the jail staff. Adding all of this up, the takeaway is that Brooks has been collecting the building blocks of success.

There is a final piece of this journey: counseling and therapy to address the deep scars of his childhood. For too long, he avoided dealing with these issues by drinking. He hopes to get counseling so he can sustain his sobriety.

FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.

Page -4-

This Court offers supervision resources and it hopes that supervisees have the will and initiative to take advantage of those resources. Brooks has proven that he seizes these opportunities. He found housing assistance and instensive alcohol treatment without court assistance and he has taken advantage of every single opportunity available to him in custody, both in education and work. And he has impressed his counselors, employers, and correctional officers along the way. Brooks is a person who has answered why this time will be different.

### II. Brooks criminal history and this offense are driven by an alcohol addiction that he has taken strides to overcoming.

Brooks suffered horrific physical and psychological abuse as a child. As a teenager, he lived in an abusive, chaotic household. He and his siblings lived in fear of Roland Scott, his mother's boyfriend who would later be sentenced by this Court. PSR ¶ 81. Scott psychologically and physically terrorized the children. PSR ¶ 81, 90. This culminated in Scott stabbing Brooks' brother and holding the family in the home in a standoff with police. PSR ¶ 81. Brooks told the police what happened and the children were taken to foster care. But perversely, Scott later tormented Brooks, by blaming Brooks for separating the family because he had told the police what happened. PSR ¶ 94.

This environment spawn Brooks' reliance on alcohol to cope. Scott gave him his first beer at 15. PSR ¶ 96. When Brooks drank, the chaos was muted. He could survive hearing the yelling and abuse because the alcohol took away the anxiety. PSR ¶ 96.

Unfortunately, for most of his 20s, he continued to rely on alcohol to cope, which contributed to nearly all of his arrests, including this one. The timeline of Brooks' criminal history is closely intertwined with his addiction. For instance, when he was 24, his drinking was so excessive that a doctor warned him that his liver could fail. PSR ¶ 96. He was able to cut down his drinking and had no issues with law enforcement for over 2 years. PSR ¶ 53-54.

But it wasn't sustainable because he hadn't addressed the underlying issues. He had no formal alcohol treatment and still drank socially. And he didn't have counseling to address the deep trauma that sparked his reliance on alcohol. By 26, he was back to drinking more heavily, leading to arrests.

FEDERAL DEFENDER SERVICES
 OF WISCONSIN, INC.

Page -5-

Alcohol truly is the driver of his criminal history. He's never committed crimes to support himself; he's always worked and worked hard. He's never been involved in gang or drug activity. This is not someone who needs to reinvent himself or his lifestyle to be successful. He needs to take the straightforward, but difficult, step of staying away from alcohol. If he can do that with the help of the probation office, there is every reason to believe that he will be a model supervisee.

Brooks has never been to prison. The period since his arrest in this case has been his longest ever period of incarceration (although he had received jail sentences of up to a year before, these were served on work release). PSR ¶ 52. Although he has received enough jail sentences to place him in criminal history category V, the sentences Brooks received generally failed to address his alcohol addiction. He most often would spend a few weeks in county jail, or serve on work release. He had little formal substance abuse treatment, prior to enrolling himself at Jesse Crawford last August. These sentences did not accomplish what a sentence in this case will: offer treatment in custody, provide resources for a successful transition back into the community, and ongoing testing and accountability to ensure he stays sober.

## Conclusion

Brooks requests a sentence of 30 months. Brooks' risk of reoffending can be significantly mitigated by federal supervision. The probation office can provide a system for multiple-times-a-day breath testing for alcohol. If he stays sober, he will perform well and will pose no danger to community. If he relapses, he will quickly fail a test and be subject to intervention by the court. Over the past year, Brooks has built a track record of responsibility and discipline that indicate that a guidelines sentence is not needed to accomplish the goals of sentencing.

Thank you for your attention to this matter.

Sincerely,

*/s/ Alex Vlisides*

Alex Vlisides
Associate Federal Defender